ENTERED ON DOCKET
R. 79 (a)

MAY 27 2004

27.
*khm*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES F. LAMBETH, JR. and )
MICHAEL D. LEA, )
                                  )
    Plaintiffs, )
                                    )
    v. )     1:03CV00592
                                    )
THE BOARD OF COMMISSIONERS OF )
DAVIDSON COUNTY, NORTH CAROLINA,)
                                  )
    Defendant. )

MEMORANDUM OPINION

OSTEEN, District Judge

    Plaintiffs Charles F. Lambeth, Jr. and Michael D. Lea bring this action against Defendant The Board of Commissioners of Davidson County ("the Board") pursuant to 42 U.S.C. § 1983 claiming a violation of the Establishment Clause of the First Amendment to the United States Constitution. This matter is now before the court on Plaintiffs' Motion for Leave to File and Serve Second Amended Complaint and the Board's Motion to Dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief may be granted.

I.    BACKGROUND

    Plaintiffs, two attorneys who live and practice law in Davidson County, North Carolina, filed this action claiming that the inscription "In God We Trust" appearing on the Davidson

County Governmental Center violates the Establishment Clause.
The Board, having approved the installation of the display,
refutes Plaintiffs' claim and moved to dismiss.  Plaintiffs filed
a First Amended Complaint, thereby superceding their original
complaint.  The Board subsequently moved to dismiss the First
Amended Complaint relying entirely upon and incorporating by
reference the arguments presented in its original motion to
dismiss.

Several past members of the Board who held office at the
time the display was approved filed an amicus curiae brief in
support of the Board.  In that brief, Amici argued that
Plaintiffs lack standing to bring this constitutional challenge.
In response, Plaintiffs moved to amend their complaint a second
time.  The Board and Amici both opposed that motion on the ground
that such an amendment would be futile.

Currently before the court are Plaintiffs' motion to amend
their First Amended Complaint and the Board's motion to dismiss
Plaintiffs' First Amended Complaint.

II.  ANALYSIS

    A.    Plaintiffs' Motion for Leave to File and Serve a Second
          Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides
that a party may amend its pleadings "once as a matter of course"
and again "only by leave of court . . . and leave shall be freely
given when justice so requires."  Fed. R. Civ. P. 15(a); <u>see</u>

2

Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987). Since Plaintiffs have already filed a First Amended Complaint, they have properly moved for leave to file and serve a Second Amended Complaint.

Plaintiffs' proposed amendments are intended solely to "amplify their allegations as to their standing." (Pls.' Br. Supp. Second Am. Compl. at 2.) Since the amendments do not serve any further purpose, see id. at 7-8, the question for this court is whether Plaintiffs have adequately alleged standing in the First Amended Complaint. If that question can be answered in the affirmative, then Plaintiffs' amendment must be viewed as futile and disallowed. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (stating that "futility of amendment" is sufficient reason to deny leave to amend a complaint).

In the First Amended Complaint, it is alleged that "Plaintiffs are each licensed attorneys who live and practice law in Davidson County, North Carolina. Each has contact with the display in the course of his professional activities in the county. Each is offended by the display, which is to him a religious statement by the County government." (First Am. Compl. ¶ 5.) Whether this allegation is sufficient to confer standing will necessarily depend on the nature of cognizable injuries recognized by Establishment Clause cases. See Suhre v. Haywood County, 131 F.3d 1083, 1085 (4th Cir. 1997). "It has been repeatedly noted that 'the concept of injury for standing

3

purposes is particularly elusive in Establishment Clause cases.'" Id. (quoting Murray v. City of Austin, 947 F.2d 147, 151 (5th Cir. 1991)); see also Saladin v. City of Milledgeville, 812 F.2d 687, 691 (11th Cir. 1987); ACLU of Ill. v. City of St. Charles, 794 F.2d 265, 267-68 (7th Cir. 1986); ACLU of Ga. v. Rabun County Chamber of Commerce, Inc., 698 F.2d 1098, 1102-03 (11th Cir. 1983).

The Supreme Court has noted that neither an individual's strong spiritual convictions nor vehement opposition to perceived state-sponsored religious expression gives rise to an injury-in-fact. See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 486, 102 S. Ct. 752, 766 (1982). As such, Plaintiffs' allegation that they are distressed by the display, taken alone, "is not a permissible substitute for the showing of injury itself." Id. ("[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy."); Suhre, 131 F.3d at 1086.

Although mere outrage or offense is not sufficient to confer standing, intangible injuries may be justiciable in Establishment Clause cases. Amici note that Plaintiffs have not asserted "any economic loss, discrimination, coercion, or any actual harm to them except their personal offense." (Amicus Curiae Br. Supp. Def. at 4.) It is well-settled, however, that Plaintiffs' standing may be predicated on non-economic injury. See Valley

4

Forge, 454 U.S. at 486, 102 S. Ct. at 766; accord United States
v. Students Challenging Regulatory Agency Procedures (SCRAP), 412
U.S. 669, 686-88, 93 S. Ct. 2405, 2415-16 (1973); Association of
Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153-54,
90 S. Ct. 827, 830 (1970); Smith v. County of Albermarle, 895
F.2d 953, 955 (4th Cir. 1990).  Allegations of discriminatory or
coercive treatment are also not required; plaintiffs may, for
example, assert aesthetic harm and establish standing.  See,
e.g., SCRAP, 412 U.S. at 686, 93 S. Ct. at 2415; Sierra Club v.
Morton, 405 U.S. 727, 734, 92 S. Ct. 1361, 1366 (1972).

Furthermore, Plaintiffs need not allege that they changed
their conduct to avoid contact with the offensive display.  See
School Dist. of Abington Township v. Schempp, 374 U.S. 203, 224-
25 & n.9, 83 S. Ct. 1560, 1573 & n.9 (1963) (stating that
standing to challenge Bible readings in public school was not
"mitigated by the fact that individual students [could] absent
themselves upon parental request, for that fact furnishes no
defense to a claim of unconstitutionality under the Establishment
Clause"); accord Suhre, 131 F.3d at 1088 ("In evaluating
standing, the Supreme Court has never required that Establishment
Clause plaintiffs take affirmative steps to avoid contact with
challenged displays or religious exercises.").  As such,
Plaintiffs' purported injury is not lessened by their failure to

5

allege economic harm, changed behavior, or any other quantifiable adverse impact caused by the display at issue.

The question, then, is whether Plaintiffs can assert a justiciable injury simply by stating their offense at the display in conjunction with their standing in the community. In Valley Forge, the Supreme Court declined to find standing when the respondents "fail[ed] to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees." 454 U.S. at 485, 102 S. Ct. at 765 (emphasis omitted). The Court reasoned that allegations of offense at a claimed Establishment Clause violation would not, absent any personal connection to the state action, give rise to standing. Id. at 486-87, 102 S. Ct. at 766. In this case, Plaintiffs have similarly alleged a primarily psychological injury, claiming that "[e]ach [Plaintiff] is offended by the display, which is to him a religious statement by the County government." (First Am. Compl. ¶ 5.)

Plaintiffs, however, have additionally stated that they are "each licensed attorneys who live and practice law in Davidson County, North Carolina. Each has contact with the display in the course of his professional activities in Davidson County." (Id.) This allegation distinguishes Plaintiffs from the respondents addressed in Valley Forge. In that case, the Court took issue

6

with the respondents' tangential connection to the state action at issue. "Respondents complain[ed] of a transfer of property located in [Pennsylvania]" although they "reside[d] in Maryland and Virginia [and] their organizational headquarters [were] located in Washington, D.C." Valley Forge, 454 U.S. at 486-87, 102 S. Ct. at 766 (noting that the respondents "learned of the transfer through a news release. Their claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court."). Plaintiffs have clearly alleged a much closer connection to the display at issue, stating that they conduct both their personal and professional lives in the county where the display is located and alleging that they come into contact with it on a regular basis.

In Suhre, the Fourth Circuit also distinguished Valley Forge on this ground. In that case, a display of the Ten Commandments appearing in Haywood County's Courthouse was challenged as violative of the Establishment Clause. 131 F.3d at 1085. The plaintiff was a frequent litigant and activist in the community, but had suffered no economic injury nor changed his behavior to avoid the display. Id. He alleged only that he was "filled with revulsion" when viewing the display. Id. Regardless, the Fourth Circuit found that the plaintiff had standing to bring his Establishment Clause claim. As that court noted, "personal

7

contact with state-sponsored religious symbolism is precisely the injury that was sufficient to confer standing in <u>School District of Abington v. Schempp</u>." <u>Id.</u> at 1086. After reviewing <u>Schempp</u> and <u>Valley Forge</u>, the Fourth Circuit determined that standing was denied in <u>Valley Forge</u> only because the respondents "had absolutely no personal contact with the alleged establishment of religion." <u>Id.</u> Other circuits have adopted a similar interpretation of <u>Valley Forge</u>, concluding that standing may be premised upon personal encounters with offending displays. <u>See, e.g.</u>, <u>Murray v. City of Austin</u>, 947 F.2d 147, 151 (5th Cir. 1991); <u>Foremaster v. City of St. George</u>, 882 F.2d 1485, 1490-91 (10th Cir. 1989); <u>Saladin v. City of Milledgeville</u>, 812 F.2d 687, 692 (11th Cir. 1987); <u>Hawley v. City of Cleveland</u>, 773 F.2d 736, 740 (6th Cir. 1985). <u>But cf.</u> <u>Freedom From Religion Found., Inc. v. Zielke</u>, 845 F.2d 1463, 1468 (7th Cir. 1988) (holding that residents did not have standing to challenge a Ten Commandments display in a city park because they did not allege that they changed their behavior as a result).

Further, "where there is a personal connection between the plaintiff and the challenged display in his or her home community, standing is more likely to lie." <u>Suhre</u>, 131 F.3d at 1087; <u>accord</u> <u>Washegesic v. Bloomingdale Pub. Sch.</u>, 33 F.3d 679, 683 (6th Cir. 1994) ("The practices of our own community may create a larger psychological wound than someplace we are just

8

passing through."); Saladin, 812 F.2d at 693 ("The plaintiffs
here, unlike the plaintiffs in Valley Forge, clearly have more
than an abstract interest in seeing that the [city] observes the
Constitution:  they are part of the [c]ity and are directly
affronted by the presence of the allegedly offensive word on the
city seal.").  The Fourth Circuit also recognized that religious
displays in public buildings can produce a more pronounced injury
than would other types of alleged Establishment Clause
violations.  Suhre, 131 F.3d at 1087 ("The spiritual affront of
unwelcome contact with religious symbolism may also be compounded
when the display that causes distress is located within a public
facility.").  The court reasoned that such displays "may seem
more in the nature of endorsements and may potentially impair the
use of the affected facilities by individuals who harbor strong
objections to a religious message." Id.  The Fourth Circuit
concluded that the plaintiff in Suhre had standing since he was a
frequent litigant and active member of the community who came
into regular contact with a display he perceived to be a
government endorsement of religion in a public building.

The facts sufficient to establish standing in Suhre parallel
the Plaintiffs' allegations in this case.  Where, in Suhre, the
plaintiff alleged revulsion, Plaintiffs here have alleged their
offense at viewing a perceived government endorsement of
religion.  Where, in Suhre, the plaintiff was often exposed to

9

the courthouse display due to his frequent status as a litigant, Plaintiffs here allege that they have regular contact with the challenged display due to their status as attorneys practicing and residing in Davidson County. Where, in <u>Suhre</u>, the plaintiff was held to have standing based on his abhorrence of and regular contact with a Ten Commandments display in a public courthouse, so too should Plaintiffs here have standing based on their offense at and regular contact with the statement "In God We Trust" displayed on a government building.

By alleging that they are offended by a perceived government expression of religion which appears in a location where each has regular personal and professional contact with it, Plaintiffs have sufficiently demonstrated standing to challenge a potential Establishment Clause violation.[1]  This holding is in accord with the Fourth Circuit's reading of <u>Valley Forge</u> and avoids the

---

[1] Amici further urge that Plaintiffs lack standing because their injury is redressable through the legislative process. Amici state, "[t]he representatives of the people of Davidson County voted to put 'In God We Trust' on the Davidson County Government Building and they can vote to take it down."  (Amicus Curiae Br. Supp. Def. at 8.)  Although courts should be mindful of impinging areas more appropriately addressed by legislative bodies, Amici's reasoning would allow incumbent government officials to commit ongoing constitutional violations until such time as a majority of constituents saw fit to elect alternative representation.  Separation of powers concerns simply do not support Amici's contention and, as Plaintiffs correctly note, it is the clear province of federal courts to determine whether a federal constitutional violation has occurred once a complaining party has alleged an injury-in-fact.  <u>See generally</u>, <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 177-80, 2 L. Ed. 60, 71-77 (1803).

10

adoption of "a restrictive rule of standing [that] shuts the door on the meritorious and nonmeritorious alike." Suhre, 131 F.3d at 1091. Accordingly, Plaintiffs have demonstrated a cognizable injury-in-fact on the basis of their First Amended Complaint.

As noted above, Plaintiffs' proposed Second Amended Complaint is offered for the single purpose of enhancing their allegations related to standing. Since Plaintiffs have standing to pursue their claim based on the allegations contained in the First Amended Complaint, their motion to allow the Second Amended Complaint is futile. Glendale Neighborhood Ass'n v. Greensboro Hous. Auth., 956 F. Supp. 1270, 1277 (M.D.N.C. 1996) (determining that the plaintiff's standing was established on the basis of current allegations and, therefore, disallowing as futile an amended complaint intended strictly to bolster the plaintiff's standing). For that reason, the court will deny Plaintiffs' motion for leave to file and serve the Second Amended Complaint.

B.  The Board's Motion to Dismiss Plaintiffs' First Amended Complaint

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of pleadings, but do not seek to resolve disputes surrounding the facts. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). A pleading "should not be dismissed for failure to state a claim unless it

11

appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."
Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).
In considering a motion to dismiss, the pleading must be
"liberally construed" in the light most favorable to the non-
moving party and allegations made therein are taken as true.
Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849
(1969).

Plaintiffs have asserted that the display of the words "In
God We Trust," on the front facade of the Davidson County
Governmental Center, as approved by an official vote of the
Board, violates the Establishment Clause of the First Amendment
to the United States Constitution. This court must determine
whether Plaintiffs have stated a claim under the Establishment
Clause upon which relief may be granted.

The Establishment Clause provides that "Congress shall make
no law respecting an establishment of religion." U.S. Const.
amend. I. That prohibition impedes government establishment of
religion "in the sense of 'sponsorship, financial support, and
active involvement of the sovereign in religious activity.'"
Brown v. Gilmore, 258 F.3d 265, 274 (4th Cir. 2001) (quoting Walz
v. Tax Comm'n of N.Y., 397 U.S. 664, 668, 90 S. Ct. 1409, 1411
(1970)).

12

Plaintiffs allege that the display of "In God We Trust" on the Davidson County Governmental Center "states a religious message" and violates the Establishment Clause. (First Am. Compl. ¶ 3(o).) Such an assertion will fail to state a claim under the Establishment Clause if, as a matter of law, the display (1) has a secular purpose, (2) does not have the principal or primary effect of advancing or inhibiting religion, and (3) does not foster excessive government entanglement with religion. Mellen v. Bunting, 327 F.3d 355, 367 (4th Cir. 2003), cert. denied, 124 S. Ct. 1750 (2004) (citing Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S. Ct. 2105, 2111 (1971)). This three-part analysis, now widely known as the Lemon test, was articulated by the Supreme Court in Lemon v. Kurtzman and has been applied by circuit courts in a variety of settings. See, e.g., ACLU of Ky. v. McCreary County, 354 F.3d 438, 445-46 (6th Cir. 2003) (Ten Commandments displayed in courthouse and classrooms); Glassroth v. Moore, 335 F.3d 1282, 1295 (11th Cir.), cert. denied, 124 S. Ct. 497 (2003) (display of Ten Commandments in judicial building); Briggs v. Mississippi, 331 F.3d 499, 505 (5th Cir. 2003) (state flag incorporating Confederate battle flag and "St. Andrews Cross" or "Southern Cross"); Freethought Soc'y of Greater Philadelphia v. Chester County, 334 F.3d 247, 256 & n.4 (3rd Cir. 2003) (Ten Commandments plaque on front facade of courthouse); Indiana Civil Liberties Union v. O'Bannon, 259 F.3d

13

766, 770 (7th Cir. 2001) (Ten Commandments monument on statehouse grounds); <u>Alvarado v. City of San Jose</u>, 94 F.3d 1223, 1231 (9th Cir. 1996) (sculpture of Quetzalcoatl, the "Plumed Serpent" of Aztec mythology, installed and maintained by municipality); <u>Robinson v. City of Edmond</u>, 68 F.3d 1226, 1229 (10th Cir. 1995) (city seal incorporating Latin or Christian cross).

The <u>Lemon</u> test has also been the analysis primarily applied by the Fourth Circuit when considering Establishment Clause cases. <u>Mellen</u>, 327 F.3d at 370 ("During the past decade, we have emphasized that the <u>Lemon</u> test guides our analysis of Establishment Clause challenges."); <u>Brown</u>, 258 F.3d at 275; <u>Koenick v. Felton</u>, 190 F.3d 259, 264 (4th Cir. 1999) ("'[U]ntil the Supreme Court overrules <u>Lemon</u> and provides an alternative analytical framework, this Court must rely on <u>Lemon</u> in evaluating the constitutionality of legislation under the Establishment Clause.'" (quoting <u>Barghout v. Bureau of Kosher Meat & Food Control</u>, 66 F.3d 1337, 1343 n.11 (4th Cir. 1995))). However, the Supreme Court has also articulated another analysis, known as the endorsement test, which focuses on the perception of a reasonable observer in determining whether government action can be understood as an endorsement of religion. <u>See</u> <u>Lynch v. Donnelly</u>, 465 U.S. 668, 687-89, 104 S. Ct. 1355, 1367-68 (1984) (O'Connor, J., concurring); <u>Mellen</u>, 327 F.3d at 370. The Fourth Circuit used that analysis in conjunction with the <u>Lemon</u> test in a case

14

involving institutionalized prayer. See Mellen, 327 F.3d at 371

(noting the special problem of government coercion to religious

worship inherent in school prayer cases and consequently deciding

to treat the endorsement test "as a refinement of Lemon's second

prong"); see also Adland v. Russ, 307 F.3d 471, 479 (6th Cir.

2002), cert. denied, 538 U.S. 999, 123 S. Ct. 1909 (2003)

(treating "the endorsement test as a refinement of the second

Lemon prong"). Although the case at bar does not involve prayer,

this court will consider the endorsement test as an enhancement

of Lemon's second prong; applying that analysis will ensure that

any coercion associated with the "In God We Trust" display has

been given an appropriate level of consideration.[2]

---

[2] It is clear that the Lemon test is the Establishment
Clause analysis applied most frequently in the Fourth Circuit.
Nonetheless, out of an abundance of caution, this court will also
consider the endorsement test when evaluating the second prong of
the Lemon analysis, as the Fourth Circuit did in Mellen v.
Bunting, 327 F.3d 355, 367 (4th Cir. 2003), cert. denied, 124 S.
Ct. 1750 (2004). If Plaintiffs have failed to state a claim
under this refined Lemon test, then they would also have failed
to state a claim under the basic Lemon test. Taking into account
the principles articulated by the endorsement test, while
simultaneously considering Lemon's second prong, will allow this
court to assure that the Board's motion to dismiss will only be
granted if Plaintiffs have failed to state an Establishment
Clause claim under either of the analyses applicable in the
Fourth Circuit.

1.  Secular Purpose

Application of the _Lemon_ test demands that the Board present a secular motivation for their installation of the "In God We Trust" display. The Supreme Court "has invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was motivated _wholly_ by religious considerations." _Lynch v. Donnelly_, 465 U.S. 668, 680, 104 S. Ct. 1355, 1362 (emphasis added); _accord_ _Bowen v. Kendrick_, 487 U.S. 589, 602, 108 S. Ct. 2562, 2570 (1988); _see also_ _Wallace v. Jaffree_, 472 U.S. 38, 56, 105 S. Ct. 2479, 2489-90 (1985) (invalidating a statute that "had _no_ secular purpose" and noting that "even though a statute that is motivated in part by a religious purpose may satisfy the first criterion, the First Amendment requires that a statute must be invalidated if it is entirely motivated by a purpose to advance religion" (internal citation omitted)). The Court has noted that government action with a secular purpose has been upheld "[e]ven where the benefits to religion were substantial." _Lynch_, 465 U.S. at 680, 104 S. Ct. at 1362-63 (citing, as one example, _Walz v. Tax Comm'n of N.Y._, 397 U.S. 664, 90 S. Ct. 1409 (1970), in which the Court concluded that it was constitutional for the Tax Commission to grant tax exemptions for properties owned and used solely for religious worship).

16

Accordingly, the Fourth Circuit has stated that "[i]n applying the first prong of the <u>Lemon</u> test . . . we need not find that the purpose be exclusively secular," such that government action "fails on this account when 'there is <u>no</u> evidence of a legitimate, secular purpose.'" <u>Brown v. Gilmore</u>, 258 F.3d 265, 276 (4th Cir. 2001) (internal citations omitted) (quoting <u>Koenick v. Felton</u>, 190 F.3d 259, 265-66 (4th Cir. 1999)). As such, in order to state a claim under the first prong of <u>Lemon</u>, Plaintiffs must assert that the Board had a purely religious purpose for approving the display.

To establish a religious motivation for the display, Plaintiffs allege that "[t]he [Board] intended that the installation of the display affix a prominent religious message to a government building" and "the religious nature of [the] words ['In God We Trust'] was repeatedly emphasized by some of the Commissioners of [the Board] who voted in favor of the installation of the display." (First Am. Compl. ¶ 3(r), (v).) Although these assertions are apparently meant to impart some impermissible purpose to the Board, they fail to do so. That the Board intentionally affixed a display to a government building which Plaintiffs believe to be a "prominent religious message" does not indicate that the Board's purpose was to endorse religion. <u>See</u> <u>Capitol Square Review & Advisory Bd. v. Pinette</u>, 515 U.S. 753, 779, 115 S. Ct. 2440, 2455 (1995) (O'Connor, J.,

17

concurring in part and concurring in judgment) ("[B]ecause our concern is with the political community writ large, the endorsement inquiry is not about the perceptions of particular individuals or . . . isolated nonadherents . . . ." (internal citations omitted)). Nor is the Board's purpose revealed in an allegation that its members engaged in an extended discussion regarding "the religious nature" of the display. That allegation, at best, indicates only that potential religious connotations of the display were addressed by the Board; it does not indicate that the Board expressed endorsement of religion as a purpose of the display.

Plaintiffs put forth only one allegation that could be perceived as demonstrating a religious purpose, claiming, "One of the Commissioners who voted in favor of the installation of the display stated, at the meeting at which defendant authorized the display, that a vote against the installation would be perceived as a vote against God." (First Am. Compl. ¶ 3(y).) This statement, however, does not conclusively impart a religious motivation to the speaker. Rather, it reflects a secular concern that religious members of the constituency might perceive a vote against the display as adverse to their personal positions and preferences. It is unsurprising and irrelevant, from a constitutional standpoint, that one of the Commissioners was concerned about constituents' perceptions of the Board's vote.

18

Taking Plaintiffs' allegation as true, the statement simply does not indicate that the speaker, much less the Board, intended to promote religion by approving the display.

Plaintiffs further allege that "the religious nature of the words ['In God We Trust'] was repeatedly emphasized by members of the public who spoke at the meeting at which the [Board] authorized the display to be installed." (First Am. Compl. ¶ 3(u).) This assertion is not relevant to determining the Board's actual purpose in approving the display. See Peck v. Upshur County Bd. of Educ., 155 F.3d 274, 281 (4th Cir. 1998) ("We do not impute an impermissible purpose to advance religion to an elected official merely because he responds to a religiously motivated constituent request . . . ."). This court is bound to consider only those allegations that impart an impermissible purpose to the Board itself, and, as discussed above, Plaintiffs' contentions do not establish that the Board was motivated by religious considerations.

Even if Plaintiffs' allegations could be construed as indicating that the Board sought to advance religion, such an assertion would not be sufficient to state a claim if the Board also held a secular purpose for its decision. See, e.g., Lynch, 465 U.S. at 680, 104 S. Ct. at 1362; Brown, 258 F.3d at 276. That some benefit may be conferred to religion does not render a government action unconstitutional because the Establishment

19

Clause has not been interpreted to demand a total separation of church and state. See Brown, 258 F.3d at 274; see also Committee for Pub. Educ. & Religious Liberty v. Nyquist, 413 U.S. 756, 760, 93 S. Ct. 2955, 2959 (1973) ("[T]his Nation's history has not been one of entirely sanitized separation between Church and State. It has never been thought either possible or desirable to enforce a regime of total separation . . . ."); Lemon, 403 U.S. at 614, 91 S. Ct. at 2112 ("Our prior holdings do not call for total separation between church and state; total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable.").

In this case, Plaintiffs concede that the Board discussed the fact that "In God We Trust" was the national motto before approving its display on the Davidson County Governmental Center. (See First Am. Compl. ¶ 3(w).) Even when taken in the light most favorable to Plaintiffs, this concession bespeaks the Board's secular purpose of acknowledging the official national motto. This purpose, which Plaintiffs do not allege to be improper or counterfeit, is sufficient to satisfy the "fairly low hurdle" that is the first step of the Lemon test. The government action at issue was not "motivated wholly by religious considerations," Lynch, 465 U.S. at 680, 104 S. Ct. at 1362, and it cannot be said that "there is no evidence of a legitimate, secular purpose" for the Board's actions. Koenick, 190 F.3d at 265-66. Consequently,

20

Plaintiffs have failed to adequately allege that the Board had a purely religious purpose in approving the display, as would be required to state a claim under the first prong of the Lemon Establishment Clause analysis.

Despite Plaintiffs' failure to show that the Board was entirely motivated by religious concerns, the Board's motion to dismiss will be denied if the Board's secular purpose is wholly overshadowed by the inherently religious nature of the display. Although the Fourth Circuit has observed that the "first prong of Lemon is 'a fairly low hurdle,'" Brown, 258 F.3d at 276 (quoting Koenick, 190 F.3d at 265-66), that court has also held that a challenged government action will not pass constitutional muster if the stated secular purpose is eclipsed by religious characteristics intrinsic to the conduct at issue.

For example, the Fourth Circuit has held that government action involving prayer and crèche displays violated the Establishment Clause even though a secular purpose was articulated for each. In North Carolina Civil Liberties Union Legal Foundation v. Constangy, a district court held that it was unconstitutional for a state court judge to recite a prayer at the beginning of morning sessions. 947 F.2d 1145, 1150 (4th Cir. 1991). Although the judge argued that the prayer served the secular purpose of solemnifying the proceedings, the Fourth Circuit affirmed the district court's finding that the actual

21

purpose had been religious. Id. ("[C]ontrolling caselaw suggests
that an act so intrinsically religious as prayer cannot meet, or
at least would have difficulty meeting, the secular purpose prong
of the Lemon test."); see also Mellen v. Bunting, 327 F.3d 355,
374 (4th Cir. 2003), cert. denied, 124 S. Ct. 1750 (2004) ("[T]he
purpose of an official school prayer 'is plainly religious in
nature.'" (quoting Stone v. Graham, 449 U.S. 39, 41, 101 S. Ct.
192, 194 (1980) (per curiam))).

Likewise, in Hall v. Bradshaw, the Fourth Circuit held
unconstitutional a "motorist's prayer" that the North Carolina
Department of Transportation printed on state maps it distributed
free of charge. 630 F.2d 1018, 1020 (4th Cir. 1980). Although
the Department claimed the purpose of the prayer was to promote
motorist safety, the court found that "[a] prayer . . . is
undeniably religious and has, by its nature, both a religious
purpose and effect" such that the government's circulation of the
prayer violated the Establishment Clause. Id. at 1020.
Similarly, in Smith v. County of Albermarle, the Fourth Circuit
found the county's crèche display violated the Establishment
Clause. 895 F.2d 953, 957-58 (4th Cir. 1990). Although it based
its holding primarily on the second prong of the Lemon analysis,
the court likened the crèche display to the one at issue in
County of Allegheny v. ACLU Greater Pittsburgh Chapter, 492 U.S.

22

573, 109 S. Ct. 3086 (1989) and found that the display was "indisputably religious." Smith, 895 F.2d at 957.

In this case, as will be discussed more thoroughly below,[3] the display of "In God We Trust" approved by the Board does not carry with it the same overtly religious connections as would government-mandated prayer or crèche displays. See County of Allegheny, 492 U.S. at 603, 109 S. Ct. at 3106 ("[T]here is an obvious distinction between crèche displays and references to God in the motto and the pledge."). The phrase "In God We Trust" is not inherently religious, particularly when considered in light of its history as this nation's official motto. That motto simply does not carry with it a clear endorsement of religious practice, as would a government prayer. Nor does it signify or convey concepts associated with a specific religion, as a crèche display would implicate Christian beliefs. Absent such an unquestionable tie to religious activity, the display of "In God We Trust" will only violate the Establishment Clause under Lemon's first prong if the Board clearly lacked any secular purpose for approving its installation.

As set forth above, Plaintiffs failed to allege that the Board lacked a secular purpose and was instead motivated by an

---

[3] Any religious connotations inherent to the phrase "In God We Trust" are more appropriately and exhaustively reviewed in this court's consideration of the second Lemon factor — that is, whether the display has the primary effect of endorsing religion.

23

impermissible desire to endorse religion.[4]  Instead, Plaintiffs have merely alleged that the Board discussed the religious connotations of the display and how it would be perceived.  When taken together with the legitimate secular purpose Plaintiffs attribute to the Board, these assertions are insufficient to state a violation of <u>Lemon</u>'s first prong.  As such, Plaintiffs have failed to state a claim under the Establishment Clause on the basis that the Board lacked a secular purpose for displaying "In God We Trust" on the Davidson County Governmental Center.

## 2. Principal Effect

The court must next inquire as to whether the display at issue has the primary effect of advancing religion.  <u>Lemon</u>, 403 U.S. at 612, 91 S. Ct. at 2111.  As noted above, this court will simultaneously address the endorsement test in this inquiry and, as such, must consider whether the display "suggests to a reasonable, informed observer that it is endorsing religion." <u>Mellen v. Bunting</u>, 327 F.3d 355, 370 (4th Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 1750 (2004) (citing <u>Lynch v. Donnelly</u>, 465 U.S. 668, 690, 104 S. Ct. 1355, 1368 (1984) (O'Connor, J., concurring)).  "'[T]he reasonable observer in the endorsement

_____

[4] An impermissible motive will not be attributed to the Board absent such an allegation since courts "must be 'reluctan[t] to attribute unconstitutional motives' to government actors in the face of a plausible secular purpose." <u>Kreisner v. City of San Diego</u>, 1 F.3d 775, 782 (9th Cir. 1993) (quoting <u>Mueller v. Allen</u>, 463 U.S. 388, 394, 103 S. Ct. 3062, 3067 (1983)).

inquiry must be deemed aware' of the 'history and context'
underlying a challenged program." Zelman v. Simmons-Harris, 536
U.S. 639, 655, 122 S. Ct. 2460, 2468-69 (2002) (quoting Good News
Club v. Milford Cent. Sch., 533 U.S. 98, 119, 121 S. Ct. 2093,
2106 (2001)); accord Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S.
290, 308, 120 S. Ct. 2266, 2278 (2000); Capitol Square Review &
Advisory Bd. v. Pinette, 515 U.S. 753, 779-80, 115 S. Ct. 2440,
2455 (1995) (O'Connor, J., concurring in part and concurring in
judgment).

    Thus, the question is not "whether there is any person who
could find an endorsement of religion, whether some people may be
offended by the display, or whether some reasonable person might
think [the Board] endorses religion." Capitol Square, 515 U.S.
at 780, 115 S. Ct. at 2455 (O'Connor, J., concurring in part and
concurring in judgment). Rather, the applicable observer is
"similar to the 'reasonable person' in tort law, who is not to be
identified with any ordinary individual, who might occasionally
do unreasonable things, but is rather a personification of a
community ideal of reasonable behavior, determined by the
[collective] social judgment." Id. at 779-80, 115 S. Ct. at 2455
(O'Connor, J., concurring in part and concurring in judgment)
(alteration in original, quoting W. Keeton, et al., Prosser and
Keeton on Law of Torts 175 (5th ed. 1984)).

Under the endorsement test, the reasonable observer is presumed to know that "In God We Trust" is the national motto, that the Davidson County Governmental Center is owned by local government, and that the building is the seat of county government. See id. at 779-81, 115 S. Ct. at 2454-55 (O'Connor, J., concurring in part and concurring in judgment) ("[P]roper application of the endorsement test requires that the reasonable observer be deemed more informed than the casual passerby . . . ."); Gaylor v. United States, 74 F.3d 214, 217 (10th Cir. 1996) (determining that the endorsement test's "reasonable observer" would be aware of the "purpose, context, and history of the phrase 'In God we trust'"); Schmidt v. Cline, 127 F. Supp. 2d 1169, 1178-79 (D. Kan. 2000) (same); see also Myers v. Loudoun County Sch. Bd., 251 F. Supp. 2d 1262, 1274-75 (E.D. Va. 2003), appeal docketed, No. 03-1364 (4th Cir. December 30, 2003)[5] (concluding that a reasonable person would not find the national motto's reference to God to be religious as opposed to secular). The reasonable observer would, thus, have at least some passing knowledge of the history of the phrase "In God We Trust" and its usage in this country. That history includes the adoption of the motto in 1956, see 36 U.S.C. § 302, and, in 1865,

_____

[5] This appeal was placed in abeyance while the Fourth Circuit awaits the Supreme Court's decision in Elk Grove Unified School District v. Newdow, No. 02-1624, 124 S. Ct. 384 (Oct. 14, 2003)), an appeal derived from the Ninth Circuit's decision in Newdow v. United States Congress, 328 F.3d 466 (9th Cir. 2003).

26

the first congressionally-authorized inclusion of the phrase on United States coins. Act of March 3, 1865, 13 Stat. 517, 518. That requirement was reaffirmed and extended over the years until 1955, when Congress mandated that the phrase appear on all coin and currency. See 31 U.S.C. §§ 5112, 5114. The motto appears in other conspicuous places of national significance including above the Speaker's Chair in the United States House of Representatives and above the main door of the United States Senate. See ACLU of Ohio v. Capitol Square Review & Advisory Bd., 243 F.3d 289, 301 (6th Cir. 2001) (en banc) (noting the inscription in the House of Representatives and stating, "the idea of any federal court having the temerity to order the inscription stricken from the nation's Capitol strikes us as ludicrous"); Act of November 13, 2002, Pub. L. No. 107-293 §§ 1(10), 2-3, 116 Stat. 2057-61 (2002) (reaffirming "One Nation Under God" in the pledge, "In God We Trust" as the national motto, and noting that the motto appears "above the main door of the Senate, behind the Chair of the Speaker of the House of Representatives, and on the currency of the United States").

With this history in mind, several federal appellate courts have considered the phrase "In God We Trust" and held that neither its use as the national motto nor its appearance on currency violates the Establishment Clause. See Gaylor, 74 F.3d at 216 (holding that "In God We Trust" as the national motto and

27

printed on currency satisfies both the <u>Lemon</u> and the endorsement tests because "[t]he motto's primary effect is not to advance religion . . . through historical usage and ubiquity [it] cannot be reasonably understood to convey government approval of religious belief"); <u>Aronow v. United States</u>, 432 F.2d 242, 243 (9th Cir. 1970) (concluding that "'In God We Trust' has nothing whatsoever to do with the establishment of religion" and noting that "[i]ts use [as a motto and on currency] is of a patriotic or ceremonial character and bears no true resemblance to a governmental sponsorship of a religious exercise. . . . [I]t is excluded from First Amendment significance because [it] has no theological or ritualistic impact."); <u>see also</u> <u>O'Hair v. Blumenthal</u>, 462 F. Supp. 19, 20 (W.D. Tex. 1978) ("[I]t is equally clear that the use of the motto on the currency <u>or otherwise</u> does not have a <u>primary</u> effect of advancing religion." (first emphasis added)), <u>aff'd per curiam sub nom.</u> <u>O'Hair v. Murray</u>, 588 F.2d 1144 (5th Cir. 1979). Other appellate courts, though not directly presented with the question, have similarly acknowledged that the motto does not violate the Establishment Clause. <u>See, e.g.</u>, <u>Glassroth v. Moore</u>, 335 F.3d 1282, 1301 (11th Cir.), <u>cert. denied</u>, 124 S. Ct. 497 (2003); <u>Freethought Soc'y of Greater Philadelphia v. Chester County</u>, 334 F.3d 247, 264 (3rd Cir. 2003); <u>Indiana Civil Liberties Union v. O'Bannon</u>, 259 F.3d 766, 780 (7th Cir. 2001); <u>ACLU of Ohio</u>, 243 F.3d at 301.

28

A collective majority of Justices of the Supreme Court have also clearly stated that "In God We Trust" and similarly brief ceremonial references to a deity are not unconstitutional. See, e.g., Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 322-23, 120 S. Ct. 2266, 2286 (2000) (Rehnquist, C.J., dissenting, joined by Scalia and Thomas, JJ.) (noting that the Establishment Clause does not prohibit singing the national anthem with its concluding verse "And this be our motto: 'In God is our trust'" at public school functions); County of Allegheny v. ACLU Greater Pittsburgh Chapter, 492 U.S. 573, 602-03, 109 S. Ct. 3086, 3106 (1989) ("Our previous opinions have considered in dicta the motto and the pledge, characterizing them as consistent with the proposition that government may not communicate an endorsement of religious belief."); id. at 630-31, 109 S. Ct. at 3121 (O'Connor, J., concurring in part and concurring in judgment, joined by Brennan and Stevens, JJ.) (concluding that the "history and ubiquity" of longstanding government practices, "such as opening legislative sessions with legislative prayers or opening Court sessions with 'God save the United States and this honorable Court,'" would "not convey a message of endorsement" to a reasonable observer "despite [the practices'] religious roots"); id. at 657, 109 S. Ct. at 3135 (Kennedy, J., concurring in part and dissenting in part, joined by Rehnquist, C.J., White and Scalia, JJ.) ("Government policies of accommodation, acknowledgment, and

29

support for religion are an accepted part of our political and cultural heritage."). Although these pronouncements are properly categorized as dicta, they are of "considerable persuasive value" to lower courts. United States v. Fareed, 296 F.3d 243, 247 (4th Cir. 2002) (citing Gaylor, 74 F.3d at 217 (stating that federal appellate courts are "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements")).

The Fourth Circuit has also opined that "'In God We Trust,' on coins or the announcement made when many courts are opened, 'God save the United States and this Honorable Court'" are "brief references to God" that "are merely examples of 'ceremonial deism.'" North Carolina Civil Liberties Union Legal Found. v. Constangy, 947 F.2d 1145, 1151 (4th Cir. 1991) (quoting County of Allegheny, 492 U.S. at 630, 109 S. Ct. at 3121 (O'Connor, J., concurring)) (distinguishing prayers led by a judge in open court from the national motto and similar phrases because "these brief references to God have been repeated so often that their religious meaning has diminished"). The decisions of other circuits holding that the national motto is constitutional have also been looked on with favor in this circuit, which has noted that "[t]he words, 'In God We Trust,' on coin and currency have been upheld as a 'patriotic and ceremonial' motto with 'no theological or ritualistic impact.'" Id. (quoting Aronow, 432

30

F.2d at 243).  Though not called on to answer the question

itself, the Fourth Circuit has clearly indicated that the

national motto is constitutional:

> The history of this nation has been identified with
> religion, and our ceremonies and public rituals reflect
> that '[w]e are a religious people whose institutions
> presuppose a Supreme Being.'  References to the Deity
> in our ceremonies and on our coinage and seals do not
> violate the Establishment Clause because they merely
> reflect this fact of our history and no longer have any
> potentially entangling theological significance. . . .
> In a very real sense [these references] may be treated
> as 'grandfathered' exceptions to the general
> prohibition against officially composed theological
> statements. . . . Their singular quality of being
> rooted in our history and their incapacity to tempt
> competing or complementary theological formulations by
> contemporary agencies of government sufficiently cabin
> them in and distinguish them from new, open-form
> theological expressions published under the aegis of
> the state.

Hall v. Bradshaw, 630 F.2d 1018, 1022-23 & n.2 (4th Cir. 1980)

(quoting Zorach v. Clauson, 343 U.S. 306, 313, 72 S. Ct. 679, 684

(1952)).

Although the phrase "In God We Trust" appears to be widely

accepted as constitutional when employed as the national motto or

printed on currency, it is not clear that these words may be

engraved on an otherwise largely unadorned local government

building.  Plaintiffs correctly assert that there are important

contextual differences between prior Fourth Circuit and Supreme

Court pronouncements, which solely addressed the motto and its

appearance on currency, and the case at bar.  As Plaintiffs note,

the motto's "use on coin and currency presents a context in which

31

their ubiquity and busy facades make the religious message much less prominent." (Pls.' Resp. Def.'s Mot. Dismiss at 12.)

Despite this distinguishing factor, two other courts have had occasion to consider local government displays of the national motto and found that these displays were constitutional. In Schmidt v. Cline, a district court considered a poster displayed by the county treasurer and bearing the words "In God We Trust" along with a "barely visible" reference identifying the phrase as the national motto. 127 F. Supp. 2d 1169, 1171 (D. Kan. 2000). Applying the Lemon test, the court concluded that, although the plaintiffs alleged numerous religious motivations, they failed to allege that the defendant lacked any secular purpose for the display. Id. at 1179. Relying on Gaylor, the court noted that the national motto was not unconstitutional under either the Lemon or the endorsement test and, as such, the posters could not be perceived by a reasonable observer as endorsing religion. Id. at 1178-79. As such, the court held that the plaintiffs failed to state a claim because the posters did not violate the Establishment Clause. Id. at 1180.

In Myers v. Loudoun County School Board, a district court considered a constitutional challenge to a public school district's implementation of a Virginia statute that required schools to post the national motto. 251 F. Supp. 2d 1262, 1264 (E.D. Va. 2003), appeal docketed, No. 03-1364 (4th Cir. December

30, 2003). The court found that displaying the posters, which showed the American flag and the text "In God We Trust: The National Motto Enacted by Congress in 1956," did not violate the Establishment Clause even though the posters were donated by a religious group. Id. at 1274-75. Relying on Gaylor and Aronow, the court determined that "the posters at issue [were] secular and not religious" and further stated that "absent any allegation that the poster contains any objectively religious theme, the court may not infer that because the designers may have been religiously motivated, that the design itself is religiously themed." Id. Concluding that the posters did not violate the Establishment Clause, the court granted the defendants' motion to dismiss. Id. at 1275.

Although Schmidt and Loudoun are instructive, the posters at issue in those cases involved important differences from the display considered here. Whereas the posters were hung on the interior of government buildings, the display at issue in this case appears on the exterior of the Davidson County Governmental Center. The display approved by the Board is also more prominent, featuring only the name of the building and the words "In God We Trust." By contrast, the posters in Schmidt and Loudoun incorporated "In God We Trust" as part of a larger poster design and identified the phrase as the national motto. The display at issue here lacks any such identification.

33

These distinctions, however, are not sufficient to compel a different result in this case. Although the display at issue here is not expressly identified as the national motto, the reasonable observer would be aware that "In God We Trust" is this country's slogan. Further, it appears that the display approved by the Board is not more likely to be perceived as an endorsement of religion simply because it is more prominently displayed than were the posters at issue in <u>Loudoun</u> and <u>Schmidt</u>.[6]

The absence of commemorative ceremonies or explicit references to religion, also absent in <u>Loudoun</u> and <u>Schmidt</u>, further mitigates against finding that the display of "In God We Trust" could be considered a religious endorsement. Plaintiffs allege that "[n]o governmental ceremony marking the display was held at its installation. No governmental ceremony marking the display has been held since its installation." (First Am. Compl. ¶ 3(h).) By this assertion, Plaintiffs assert that the lack of a commemorative ceremony increases the likelihood that the display could be perceived as endorsing religion. However, since no

---

[6] In fact, the posters at issue in <u>Schmidt</u> and <u>Loudoun</u> may have been in greater danger of violating the Establishment Clause than is the display at issue here. The posters in <u>Schmidt</u> applied special emphasis to the word "God," which appeared in large red lettering. 127 F. Supp. 2d 1169, 1171 (D. Kan. 2000). The posters in <u>Loudoun</u> were placed in schools (a venue typically receiving closer First Amendment scrutiny due to coercion concerns) and were donated by religious groups. 251 F. Supp. 2d 1262, 1273 (E.D. Va. 2003), <u>appeal docketed</u>, No. 03-1364 (4th Cir. December 30, 2003). Such considerations are not present in this case.

34

ceremony was ever held, no government endorsement could have been conveyed at such an event; the absence of a ceremony increases the already high probability that the reasonable observer, aware of the motto's history, would not perceive a display of "In God We Trust" as a government endorsement of religion.

Further, Plaintiffs do not allege that any plaque or other identifying inscription suggests that the display endorses religion; rather, Plaintiffs complain that no such feature exists to identify the phrase as the national motto. (See id. ¶¶ 3(m), (n).) Where, as discussed above, a phrase would be commonly recognized by the reasonable observer as a secular acknowledgment of history, the absence of any explanatory sign or plaque does not suggest a religious affiliation. Cf. County of Allegheny, 492 U.S. at 598-600, 109 S. Ct. at 3103-05 (considering a crèche display inside a government building and concluding that the addition of the words "Glory to God in the Highest!" and a sign identifying the display as owned by a Roman Catholic organization heightened the appearance of government endorsement).

In short, neither the display itself nor any accompanying ceremony or plaque emphasizes the "brief reference" to God which appears in our national motto. North Carolina Civil Liberties Union Legal Found. v. Constangy, 947 F.2d 1145, 1151 (4th Cir. 1991). The mere mention of God does not, in this context, create an Establishment Clause violation. Cf. Freethought Soc'y of

35

Greater Philadelphia v. Chester County, 334 F.3d 247, 264 (3rd
Cir. 2003) (stating that, as to the phrases "In God We Trust" and
"God save the United States and this Honorable Court," the
reasonable observer is "aware of the history of these invocations
of God" and "views the religious language as tempered by the
secular meaning that has emerged over the passage of time; the
overall effect is that the reasonable person would not perceive
in these phrases a government endorsement of religion (despite
the clear use of the word 'God.')"); Schmidt, 127 F. Supp. 2d at
1171 (finding county treasurer's display of a poster bearing the
national motto to be constitutional, despite the poster's
emphasis of the word "God," which appeared in red lettering
larger than the black font used to print the rest of the motto).
Returning to the lengthy string of cases which have considered
the motto, it is clear that this reference to God and others like
it "are merely examples of 'ceremonial deism' . . . repeated so
often that their religious meaning has diminished." Constangy,
947 F.2d at 1151 (quoting County of Allegheny, 492 U.S. at 630,
109 S. Ct. at 3121 (O'Connor, J., concurring)).

     In light of the motto's history and in the absence of any
feature that could indicate religious affiliation, the simple
appearance of "In God We Trust" on the Davidson County
Governmental Center does not have the principal effect of
advancing religion.  Moreover, the display, when considered from

                              36

the perspective of a reasonable observer, does not endorse religion. See, e.g., Gaylor, 74 F.3d at 217 (holding that a reasonable observer, "aware of the purpose, context, and history of the phrase 'In God we trust' would not consider its use . . . to be an endorsement of religion"). Accordingly, the display does not violate either the endorsement test or the second prong of the Lemon test; Plaintiffs have failed to state a claim under the Establishment Clause on either of those bases.

3. Excessive Entanglement

The only remaining ground on which Plaintiffs may succeed in stating a violation of the Establishment Clause is their claim that the display creates excessive government entanglement with religion. See Lemon, 403 U.S. at 612, 91 S. Ct. at 2111. This third prong of the Lemon analysis is intended to effectuate the Establishment Clause's "protection [against] 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'" Id. (quoting Walz v. Tax Comm'n of N.Y., 397 U.S. 664, 668, 90 S. Ct. 1409, 1411 (1970)).

In Gaylor v. United States, the Tenth Circuit held that the national motto "does not create an intimate relationship of the type that suggests unconstitutional entanglement of church and state." 74 F.3d 214, 216 (1996). Other courts that have examined the motto under the Lemon test reached similar results. See, e.g., O'Hair v. Blumenthal, 462 F. Supp. 19, 20 (W.D. Tex.

37

1978) ("[I]t would be ludicrous to argue that the use of the national motto fosters any excessive government entanglement with religion."), aff'd per curiam sub nom. O'Hair v. Murray, 588 F.2d 1144 (5th Cir. 1979). Accordingly, the motto itself does not foster excessive entanglement between government and religion.

Whether or not the motto, when permanently displayed on a local government building, gives rise to excessive entanglement appears not to have been addressed by any court. When considering Establishment Clause challenges brought against other types of displays, courts generally consider both the expenditure of government funds and any "ongoing, day-to-day interaction between church and state" that may result. North Carolina Civil Liberties Union Legal Found. v. Constangy, 947 F.2d 1145, 1152 (4th Cir. 1991) (quoting Lynch v. Donnelly, 465 U.S. 668, 684, 104 S. Ct. 1355, 1365 (1984)).

In this case, there has been no allegation that the display in question causes the Board to interact with religious groups or individuals or that the Board has made any actual expenditure to install or maintain the display. Cf. Lynch, 465 U.S. at 684, 104 S. Ct. at 1365 (finding that a crèche display did not give rise to impermissible entanglement when there "is no evidence of contact with church authorities concerning the content or design of the exhibit . . . . No expenditures for maintenance of the crèche have been necessary . . . . In many respects the display

requires far less ongoing, day-to-day interaction between church and state than religious paintings in public galleries."). There is no indication that any government action at issue in this case can be likened to "the 'comprehensive, discriminating, and continuing state surveillance' or the 'enduring entanglement' present in Lemon." Id. (citation omitted) (quoting Lemon, 403 U.S. at 619-622, 91 S. Ct. at 2114-15).

Even if the court assumes that the Board is responsible for maintaining the display, courts have found that similar, de minimis expenditures did not result in excessive entanglement or otherwise violate the Establishment Clause. See, e.g., id. (finding that a crèche, when included in a display with secular Christmas items, did not create excessive entanglement when no expenditures for maintenance of the crèche were necessary); Suhre v. Haywood County, 55 F. Supp. 2d 384, 398 (W.D.N.C. 1999) (finding that a courthouse display of the Ten Commandments did not cause excessive entanglement when expenditures of government funds were "minute" and only necessary for cleaning, and the funds were not used to support religious organizations). The performance of routine upkeep for the display at issue, which apparently requires little to no maintenance, simply does not give rise to a violation of the Establishment Clause.

To further assert impermissible entanglement, Plaintiffs allege that the installation of the display "has resulted in

39

political division along religious lines in Davidson County."
(First Am. Compl. ¶ 3(z).)  In support of this proposition,
Plaintiffs cite two Fourth Circuit decisions which found that
government speech violated <u>Lemon</u>'s third prong by producing
political divisiveness.  <u>See</u> <u>Constangy</u>, 947 F.2d at 1152; <u>Hall v.</u>
<u>Bradshaw</u>, 630 F.2d 1018, 1021 (4th Cir. 1980).

    The Fourth Circuit opinions on which Plaintiffs rely are
distinguishable from the present case.  First, both <u>Constangy</u> and
<u>Hall</u> involved government prayer.  <u>See</u> <u>Constangy</u>, 947 F.2d at 1147
(considering a state court judge's practice of opening morning
sessions with a prayer); <u>Hall</u>, 630 F.2d at 1019 (considering a
prayer printed on official state maps).  As already discussed
herein, the Fourth Circuit has consistently applied the <u>Lemon</u>
test more stringently when evaluating government action that
involved inherently religious acts or symbols.  <u>See, e.g.</u>, <u>Mellen</u>
<u>v. Bunting</u>, 327 F.3d 355, 374 (4th Cir. 2003), <u>cert. denied</u>, 124
S. Ct. 1750 (2004) (concluding that a school prayer was "plainly
religious in nature" and violative of the Establishment Clause
despite the stated secular purposes of promoting tradition and
religious tolerance (quoting <u>Stone v. Graham</u>, 449 U.S. 39, 41,
101 S. Ct. 192, 194 (1980) (per curiam))); <u>Smith v. County of</u>
<u>Albermarle</u>, 895 F.2d 953, 957-58 (4th Cir. 1990) (finding a
crèche display to be "indisputably religious" and violative of
the Establishment Clause despite the stated secular purpose of

40

celebrating the Christmas holiday). In cases involving prayer, the Fourth Circuit has additionally and consistently expressed concern, not only that such government action is inherently religious, but also that government prayer is coercive and promotes certain theological practices over others. See, e.g., Mellen, 327 F.3d at 371-72; Constangy, 947 F.2d at 1151; Hall, 630 F.2d at 1021. Such concerns are simply not present in this case, which, as discussed previously, does not involve an "indisputably religious" government act.

The Fourth Circuit's close consideration of prayer cases and the absence of the same concerns here indicates that the potential for political divisiveness is also lessened in this case. This reasoning is supported by the Fourth Circuit's discussions in Constangy and Hall; in both cases the court compared government prayer to "In God We Trust" and opined that the phrase does not violate the Establishment Clause. See Constangy, 947 F.2d at 1151 ("The words, 'In God We Trust,' on coin and currency have been upheld as a 'patriotic and ceremonial' motto with 'no theological or ritualistic impact.'" (quoting Aronow v. United States, 432 F.2d 242, 243 (9th Cir. 1970))); Hall, 630 F.2d at 1023 ("References to the Deity in our ceremonies and on our coinage and seals do not violate the Establishment Clause because they merely reflect . . . our

41

history and no longer have any potentially entangling theological significance.").

Since the Fourth Circuit has consistently treated government prayer as inherently raising greater cause for concern than other Establishment Clause challenges, Constangy and Hall are both distinguishable from the case at bar. Because the Fourth Circuit explicitly noted in both cases that the national motto does not violate the Establishment Clause, it is particularly tenuous to argue that those opinions support a finding that a local government's display of the national motto is unconstitutional.

Constangy and Hall are further distinguishable because, unlike the plaintiffs in those cases, Plaintiffs here have failed to show any other ground on which the display at issue violates the Establishment Clause. See Constangy, 947 F.2d at 1152 (concluding that the prayer at issue violated all three prongs of the Lemon test); Hall, 630 F.2d at 1019-21 (same). The Supreme Court has indicated that, where other grounds from which to find an Establishment Clause violation are absent, political divisiveness alone is not sufficient to strike down a government action. See Lynch, 465 U.S. at 684, 104 S. Ct. at 1365 (noting that the Court has never held political divisiveness alone to be a basis for invalidating state action and stating that "no inquiry into potential political divisiveness is even called for" when "direct subsidy to church-sponsored schools or colleges, or

42

other religious institutions" is absent); see also id. at 689, 104 S. Ct. at 1367-68 (O'Connor, J., concurring) (noting that the Court has "never relied on divisiveness as an independent ground for holding a government practice unconstitutional. . . . [T]he existence of the litigation . . . itself may affect the political response. . . . [T]he constitutional inquiry should focus ultimately on the character of the government activity that might cause such divisiveness, not on the divisiveness itself.").

This persuasive dicta from the Supreme Court indicates that, because Plaintiffs have failed to state a claim under the Establishment Clause on any other ground, political divisiveness alone cannot form the sole basis for their cause of action. As set forth above, the Fourth Circuit opinions finding political divisiveness to be a source of impermissible entanglement are distinguishable from this case. As such, this court cannot conclude that the display of "In God We Trust" creates excessive entanglement on the grounds expressed in Constangy and Hall.

Plaintiffs have alleged no fact that demonstrates a cognizable Establishment Clause claim based on excessive government entanglement with religion. It is apparent that any maintenance of the display will not, in fact, give rise to such entanglement, and political divisiveness alone (assuming any has occurred) cannot form the basis of an Establishment Clause claim. Accordingly, this court concludes that the display will not

43

necessitate extensive government involvement with religion and, therefore, does not violate the third prong of the <u>Lemon</u> test. As such, Plaintiffs have failed to state a claim under the Establishment Clause on the basis that the display causes excessive entanglement between government and religion.

III. CONCLUSION

As set forth above, this court concludes that the display of "In God We Trust" on the Davidson County Governmental Center was not instituted without an actual, secular purpose, does not convey to the reasonable viewer a government endorsement of religion, and will not produce an excessive entanglement of church and state. The display does not, therefore, violate the Establishment Clause as a matter of law. As such, Plaintiffs have failed to state a claim upon which relief may be granted.

Having found that Plaintiffs have standing to bring this constitutional challenge, the court will deny as futile Plaintiffs' motion to amend their First Amended Complaint. Having found as a matter of law that Plaintiffs failed to state a claim upon which relief may be granted, the court will grant the Board's motion to dismiss the First Amended Complaint. A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

44

This the **25** day of _**May**_ 2004.

_United States District Judge_