PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHARLES F. LAMBETH, JR.; MICHAEL
D. LEA,
        *Plaintiffs-Appellants*,

v.

THE BOARD OF COMMISSIONERS OF
DAVIDSON COUNTY, NORTH CAROLINA,
        *Defendant-Appellee*.



No. 04-1753

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CA-03-592)

Argued: February 3, 2005

Decided: May 13, 2005

Before WIDENER and KING, Circuit Judges, and
Henry F. FLOYD, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Widener and Judge Floyd joined.

## COUNSEL

**ARGUED:** George Daly, Charlotte, North Carolina, for Appellants.
James Redfern Morgan, Jr., WOMBLE, CARLYLE, SANDRIDGE &
RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellee. **ON**

BRIEF: John W. Gresham, FERGUSON, STEIN, CHAMBERS, ADKINS, GRESHAM & SUMTER, Charlotte, North Carolina, for Appellants.

## OPINION

KING, Circuit Judge:

Plaintiffs Charles F. Lambeth, Jr. and Michael D. Lea appeal the district court's dismissal of their complaint in this civil action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Plaintiffs have alleged, pursuant to 42 U.S.C. § 1983, that the Board of Commissioners of Davidson County, North Carolina (the "Board"), violated the Establishment Clause of the First Amendment when it authorized the phrase "In God We Trust" to be inscribed on the facade of the Davidson County Government Center (the "Government Center"). The district court, upon analyzing the Plaintiffs' allegations, concluded that they failed to assert a violation of the Establishment Clause, as measured by the test prescribed by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) (the "*Lemon* test"). As explained below, we affirm.

I.

Plaintiffs Lambeth and Lea are lawyers who regularly practice in the Government Center, located in the City of Lexington, the county seat of Davidson County, North Carolina. On June 24, 2003, the Plaintiffs filed this civil action against the Board under § 1983, alleging a violation of the Establishment Clause of the First Amendment.[1]

---

[1] The Establishment Clause provides, "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I. The Supreme Court has advised that this protection is incorporated by the Fourteenth Amendment as a protection against establishment of religion by the states. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) ("The First Amendment declares that Congress shall make no law respecting an establishment of religion . . . [and] [t]he Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws.").

They maintain that, around December 31, 2002, the Board unconstitutionally decided to inscribe the national motto, "In God We Trust," on the Government Center (the "display"). According to the Plaintiffs, Board members and the public spoke both in favor of and against the proposed display at the crucial Board meeting, emphasizing the religious nature of the words "In God We Trust," and observing that the display depicted the national motto. The display has since been installed on the front facade of the Government Center in eighteen-inch block letters.

On August 21, 2003, the Board moved to dismiss the Plaintiffs' action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief could be granted. Soon thereafter, on September 15, 2003, the Plaintiffs filed their First Amended Complaint (the "Complaint"). On October 2, 2003, the Board filed another Rule 12(b)(6) motion, asserting that the Complaint was legally deficient and incorporating by reference the contentions made in the Board's initial motion to dismiss.

On May 25, 2004, the district court dismissed the Complaint, concluding that it failed to state a claim of a First Amendment violation on which relief could be granted. *Lambeth v. Bd. of Comm'rs*, No. 03-cv-592-WLO (M.D.N.C. May 25, 2004) (the "Memorandum Opinion"). In so ruling, the court determined that the allegations of the Complaint fail, under the *Lemon* test, to demonstrate a violation of the Establishment Clause. Memorandum Opinion at 44. The Plaintiffs have timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *Duckworth v. State Admin. Bd. of Election Laws*, 332 F.3d 769, 772 (4th Cir. 2003). Under controlling principles, a district court may dismiss a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In assessing a Rule 12(b)(6) issue, we accept as true the factual allegations of the challenged complaint, *see Zinermon v. Burch*, 494 U.S. 113, 118 (1990), and we view those allegations in the light

most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). On appeal, our inquiry is limited to whether the "pleadings adequately state a set of facts which, if proven to be true, would entitle [the plaintiff] to judicial relief." *Duckworth*, 332 F.3d at 772.

III.

A.

Under our precedent, the Establishment Clause issue presented here is properly analyzed (as the district court did in making its challenged ruling), under the *Lemon* test enunciated by the Supreme Court. *See Mellen v. Bunting*, 327 F.3d 355, 370 (4th Cir. 2003) (applying *Lemon* test to analysis of Establishment Clause challenge to state university's supper prayer). In *Lemon*, the Court considered a state statute benefitting parochial school teachers, and assessed the constitutionality of the statute by examining whether it satisfied three conditions: first, whether there was a secular purpose behind the statute; second, whether the statute's principal or primary effect was one that neither advanced nor inhibited religion; and third, whether the statute fostered an "excessive government entanglement with religion." 403 U.S. at 612-13. To pass muster under the Establishment Clause, a challenged government action must satisfy each of the *Lemon* test's three criteria. *Mellen*, 327 F.3d at 367. In *County of Allegheny v. American Civil Liberties Union*, the Court elaborated on the *Lemon* test by examining whether the governmental use of an object with religious meaning (there, a crèche) had the effect of "endorsing" religion. 492 U.S. 573, 593-94 (1989). As we recognized in *Mellen*, we have treated *County of Allegheny*'s "endorsement" test as an "enhancement of *Lemon*'s second prong." *See Mellen*, 327 F.3d at 370-71.

In this proceeding, the district court concluded that the Complaint failed to adequately allege that the display contravened any of the *Lemon* test's three prongs. First of all, the court determined, under the first prong, that the Complaint failed to allege an entirely religious purpose behind the Board's installation of the display. Memorandum Opinion at 22-24. Next, the court determined, under the second prong, that the display could not have the primary effect of advancing religion in the eyes of a reasonable, informed observer. *Id.* at 24-37.

Finally, the court concluded that the display of the national motto did not result in an "excessive entanglement" of government with religion, and thus that it did not contravene the third prong. *Id.* at 37-44.

On appeal, the Plaintiffs contend that the district court erred in its application of the *Lemon* test, and that the allegations of the Complaint are sufficient to proceed to discovery. They maintain that the Complaint alleges that the Board's "dominant" purpose in approving the display was religious, which, they contend, is sufficient to allege that the display fails the *Lemon* test's first prong; that the effect of the display is to advance or endorse religion, prohibited by the *Lemon* test's second prong; and that the display results in an excessive entanglement of government with religion, precluded by the *Lemon* test's third prong. Pursuant to *Lemon* and its progeny, we assess de novo the alleged constitutional defects of the display.

1.

We first assess, under prong one of the *Lemon* test, whether the Complaint sufficiently alleges that the Board's adoption of the challenged display lacked a secular intent. As the district court observed, the Complaint alleges that both secular and religious aspects of the display were discussed at the crucial Board meeting. Memorandum Opinion at 22-24. The Complaint alleges that Board members, and members of the public as well, "emphasized" at the Board meeting the religious nature of the phrase "In God We Trust," and that the display was thereafter adopted. Complaint at ¶ 3(u)-(v). The Complaint further alleges that one Board member observed that voting against the installation of the display would be perceived by the public as a vote against God. *Id.* at ¶ 3(y). Finally, the Complaint also alleges that "the fact that these words are also the national motto was mentioned but not emphasized at the meeting at which defendant authorized the display." *Id.* at ¶ 3(w).

Although the Plaintiffs contend that their allegations are sufficient in this regard, we are constrained to disagree. Under applicable Supreme Court precedent, a "legitimate secular purpose" supporting a challenged governmental action will suffice to satisfy the *Lemon* test's first prong. *See Lynch v. Donnelly*, 465 U.S. 668, 681 (1984). And, as we have previously observed, the demonstration of such a

legitimate secular purpose is "a fairly low hurdle." *Brown v. Gilmore*, 258 F.3d 265, 276 (4th Cir. 2001). Indeed, we will deem the first prong of the *Lemon* test to be contravened "only if [the action] is 'entirely motivated by a purpose to advance religion.'" *See Mellen*, 327 F.3d at 372 (quoting *Wallace v. Jaffree*, 472 U.S. 38, 56 (1985)).

A legitimate secular purpose is thus sufficient to pass muster under the first prong of the *Lemon* test, unless the alleged secular purpose is in fact pretextual. *See Santa Fe Ind. Sch. Dist. v. Doe*, 530 U.S. 290, 308-09 (2000); *see also Stone v. Graham*, 449 U.S. 39, 41 (1980) ("The Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact."). In this matter, the Complaint fails to allege that the Board's discussion of the phrase "In God We Trust" as the national motto was a pretext for its religious motivations, and thereby fails to allege that there was no legitimate secular purpose to the Board's approval of the display. As a result, the display's installation, on the basis of allegations of the Complaint, does not contravene the *Lemon* test's first prong.[2]

2.

Turning to the *Lemon* test's second prong, we next assess whether the Complaint alleges that the display's principal or primary effect is to advance or inhibit religion, or whether the display has the effect of "endorsing" religion. In this regard, the Plaintiffs contend that the district court erred in concluding that the Complaint's allegations of the religious meaning and effect of the display fail to contravene the *Lemon* test's second prong. Again, we disagree.

---

[2] The Plaintiffs contend that they are required to demonstrate an "entirely religious" purpose for the display only after discovery has been completed, rather than in their Complaint at the pleading stage. However, a complaint must contain a short and plain statement showing an entitlement to relief. Fed. R. Civ. P. 8(a). While the sufficiency of the Complaint's allegations presents a close question, the Plaintiffs have conceded in the Complaint that there was some secular purpose in the display, without alleging that the purported secular purpose was pretextual. The Plaintiffs have therefore failed to establish a dispute over the display's purpose that would justify discovery.

a.

We have heretofore characterized the phrase, "In God We Trust," when used as the national motto on coins and currency, as a "patriotic and ceremonial motto" with "no theological or ritualistic impact." *Carolina Civil Liberties Union Legal Found. v. Constangy*, 947 F.2d 1145, 1151 (4th Cir. 1991). The use of the challenged phrase as the national motto is long-standing, and it has been used extensively over the years by the federal government. By way of example, Congress first authorized the National Mint to include "In God We Trust" on coins in 1865, and made its inclusion mandatory on gold and silver coins in 1908. Its use was extended to the national currency in 1955. Importantly, Congress made "In God We Trust" the national motto in 1956, and the motto is inscribed above the Speaker's Chair in the House of Representatives, and also above the main door of the Senate Chamber.

The Supreme Court has strongly indicated on several occasions, albeit in dicta, that governmental use of the motto "In God We Trust," does not, at least in certain contexts, contravene the mandate of the Establishment Clause. *See County of Allegheny*, 492 U.S. at 602-03 ("[O]ur previous opinions have considered in dicta the ["In God We Trust"] motto . . ., characterizing [it] as consistent with the proposition that government may not communicate an endorsement of religious belief."); *Lynch*, 465 U.S. at 693 (O'Connor, J., concurring) ("[G]overnment's display of the crèche in this particular physical setting [is] no more an endorsement of religion than such governmental 'acknowledgments' of religion as . . . [the] printing of 'In God We Trust' on coins . . . ."). Such observations by the Court, interpreting the First Amendment and clarifying the application of its Establishment Clause jurisprudence, constitute the sort of dicta that has considerable persuasive value in the inferior courts. *See Garris v. Norfolk Shipbldg. & Drydock Corp.*, 210 F.3d 209, 227 (4th Cir. 2000) (Hall, J., concurring) (observing that Court's interpretation of its own opinion is persuasive).

As the Plaintiffs properly recognize, however, the County's installation of the national motto on the facade of the Government Center constitutes a governmental action which goes beyond the traditional uses of the phrase, as discussed in the Court's dicta and by our prece-

dent, which have been limited to the phrase's appearance on coins and currency, and as the national motto. Plaintiffs urge that, no matter how the challenged phrase is viewed in its use on coins, currency, and in other long-standing contexts, such uses are inapposite to the Board's display here — only recently installed on the Government Center. As a result, the Plaintiffs urge us to view the Board's use of the phrase on a blank slate. And, they contend, when viewed in that light, an objective observer would understand the Board's display of this "religious creed" as an unconstitutional endorsement of religion.

Plaintiffs' contention on this point, however, slightly mischaracterizes the analysis required under the *Lemon* test's second prong. It suggests that anything not wholly secular contravenes the Establishment Clause, unless it has been specifically "grandfathered" by longstanding use. The proper analysis is the converse: whether a particular display, with religious content, would cause a reasonable observer to fairly understand it in its particular setting as impermissibly advancing or endorsing religion. *See County of Allegheny*, 492 U.S. at 598-00. As the Supreme Court observed in *Lynch*, to "[f]ocus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause." 465 U.S. at 680. Instead, the Court has consistently concluded that displays with religious content — but also with a legitimate secular use — may be permissible under the Establishment Clause. *See, e.g., County of Allegheny*, 492 U.S. at 579 (concluding that display of menorah did not violate Establishment Clause).

In this situation, the reasonable observer must be deemed aware of the patriotic uses, both historical and present, of the phrase "In God We Trust." *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 119 (2001) ("'[T]he reasonable observer in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious [speech takes place]'") (quoting *Capitol Square Review and Advisory Bd. v. Pipette*, 515 U.S. 753, 779-80 (1995) (O'Connor, J., concurring)). As a result, we are obliged to assess the Board's use of the national motto on the facade of the Government Center in its full context — as a statement with religious content, and as one with legitimate secular associations born of its consistent use on coins and currency, and as the national motto. The question under the *Lemon* test's second prong is whether, taking

these associations into account, the display's principal or primary effect is to advance or inhibit religion; or, put differently, whether an informed, reasonable observer would view the display as an endorsement of religion. We now turn to an assessment of that question.

b.

The Plaintiffs maintain that, in making this analysis under the *Lemon* test's second prong, we must consider the reasonable observer to be aware of the religious comments made in favor of the display at the Board meeting where it was authorized. However, as the district court determined, the allegations of the Complaint on the Board's intent are inapplicable to the *Lemon* test's second prong. The first and second prongs of the *Lemon* test are intended to assess different aspects of a challenged government action. Prong one of the *Lemon* test looks at the purpose behind such an action, and allows the action to stand if it is not "entirely motivated by religion." *Mellen*, 327 F.3d at 372. Prong two, by contrast, assesses the effect of the action, *Lemon*, 403 U.S. at 612-13, and inquires "whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval [of religion]," *Mellen*, 327 F.3d at 373 (quoting *Wallace*, 472 U.S. at 56 n. 42). Prong two thus looks to the effect of the display itself, not to the display's origin. *See Constangy*, 947 F.2d at 1151 (explaining that, under the *Lemon* test's second prong, "intent is irrelevant").

With these principles in mind, we are constrained to conclude, under the *Lemon* test's second prong, that the installation of the national motto "In God We Trust" on the Government Center would not cause a reasonable observer to fairly understand the purpose of the message "in its particular physical setting" to impermissibly advance or endorse religion. *County of Allegheny*, 492 U.S. at 598-00; *see also Good News Club*, 533 U.S. at 119 (emphasizing that Establishment Clause does not create a "heckler's veto"). The Complaint alleges no circumstances — such as an inappropriate context or character — to negate the legitimate secular connotations arising from the long-standing patriotic uses in this country of the phrase "In God We Trust." A reasonable observer contemplating the inscription of the phrase on the Government Center would recognize it as recently installed, but also as incorporating familiar words — a phrase with

religious overtones, to be sure, but also one long-used, with all its accompanying secular and patriotic connotations as our national motto and currency inscription. In this setting, we thus conclude that the Board's use of the national motto in the challenged display does not contravene the *Lemon* test's second prong.

### 3.

Finally, we are obliged to assess, under the *Lemon* test's final prong, whether the Complaint sufficiently alleged that the challenged display has created an "excessive entanglement" between government and religion. In this regard, Plaintiffs contend that the district court erroneously declined to consider their allegations of "political divisiveness," which they deem to be pertinent to the issue of "excessive entanglement."

The type of "divisive political potential" which the Supreme Court has identified as a concern under the Establishment Clause is "political division along religious lines." *Lemon*, 403 U.S. at 622. And, as we recognized in *Ehlers-Renzi v. Connelly School of the Holy Child, Inc.*, the Court has confined its "political divisiveness" rubric to "'cases where direct financial subsidies are paid to parochial schools or to teachers in parochial schools.'" 224 F.3d 283, 292 (4th Cir. 2000) (quoting *Mueller v. Allen*, 463 U.S. 388, 403-04 n. 11 (1983)). The Court's "political divisiveness" rubric is thus inapplicable to the circumstances of this case.

Moreover, there are no other apparent grounds, either alleged in or arising from the Complaint, on which to find an "excessive entanglement" between government and religion in this case that would contravene the *Lemon* test's third prong. The kind of excessive entanglement of government and religion precluded by *Lemon* is characterized by "comprehensive, discriminating, and continuing state surveillance" of religious exercise, *see Lemon*, 403 U.S. at 619, which is simply not present here. The display on the Government Center does not require pervasive monitoring or other maintenance by public authorities. *See Mueller*, 463 U.S. at 403 (explaining that such comprehensive surveillance is "necessary [for a challenged action] to run afoul of" *Lemon*'s third prong); *see also Agostini v. Felton*, 521 U.S. 203, 233-34 (1997) (concluding that program of sending public

school teachers into parochial schools to provide remedial education to disadvantaged children did not result in excessive entanglement). Nor does the display require any other sort of continued and repeated government involvement with religion. *See Mellen,* 327 F.3d at 375 (determining that public university's supper prayer violated *Lemon*'s third prong because school officials "composed, mandated, and monitored a daily prayer"). As a result of the foregoing, we must also conclude that the display does not contravene the *Lemon* test's third prong.

### B.

In sum, even accepting the allegations of the Complaint as true, the display does not contravene any of the three prongs of the *Lemon* test. The Complaint fails to sufficiently allege that the display had no legitimate secular purpose; that it has the effect of advancing or endorsing religion; or that it results in an excessive entanglement of government and religion. As a result, we agree with the comprehensive analysis made by the district court with regard to this dispute, *see* Memorandum Opinion at 18-44, and conclude that the Complaint fails to state a claim for relief under the Establishment Clause upon which relief can be granted.

### IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

*AFFIRMED*